D. BEAM et al. v. WILEY BRIDGERS et al.

*Husband and Wife—Marriage—Contract—Trust.*

While, under the former system, the wife's money became the property of the husband *jure mariti*, the latter may agree as between him and the wife to treat it as the wife's property, and where there is evidence to show an agreement to that effect, and that the husband invested it in land for her benefit and took the title in his name, there is a resulting trust.

SPECIAL PROCEEDING for partition, tried before *Brown, J.*, at Fall Term, 1890, of the Superior Court of RUTHERFORD County.

The only issue submitted to the jury was as follows:

"Was the first 150-acre tract described in the complaint and conveyed by Anderson Bridgers to John Beam, February 18th, 1846, purchased by John Beam with the money of his wife Elizabeth, and at her request and for her?"

There was testimony tending to show that Mrs. Beam was possessed of certain money; that her husband voluntarily agreed to treat it as hers, and to waive his marital rights in respect to it by investing the same for her in the lands above mentioned. Neither John Beam nor his wife had any children.

The plaintiffs requested the Court to charge that, under the testimony, the issue should be answered in the negative, and that the Court should so charge. The Court refused to give the instruction. There was a verdict against the plaintiffs, and they appealed.

*Mr. M. H. Justice*, for plaintiffs.
*Mr. J. A. Forney*, for defendants.

SHEPHERD, J.: The only question presented for review is whether there was sufficient evidence to sustain an affirmative finding of the second issue We think it very clear, from the testimony of James and William Bridgers, that John Beam purchased the land in question with his wife's money at her request; that the purchase was intended for her benefit, and that such was the understanding and agreement of the parties. It may also be inferred that she intended that the title should be made to her. Indeed, the agreement was that the husband should purchase the land " for her," and the necessary implication is, that the title was to be taken in her name. It is a well settled principle that where,

on the purchase of property, the conveyance of the legal estate is taken in the name of one person, but the purchase-money is paid by another at the same time or previously, and as a part of one transaction, a trust results in favor of him who supplies the purchase-money. Adams' Eq., 33; Malone on Real Property, 509. The principle has frequently been applied where land is purchased with funds arising from the separate estate of the wife (*Cunningham* v. *Bell*, 83 N. C., 328; *Lyon* v. *Akin*, 78 N. C., 258), or with funds which, by agreement of the husband, are to be treated as such separate estate. *Hackett* v. *Shuford*, 86 N. C., 144, and the cases cited.

It is urged, however, that in our case the money with which the land was purchased was not the separate estate of the wife, and that the agreement of the husband to treat it as such being purely voluntary, and, therefore, of no effect, there was nothing to prevent the operation of the principle by which the money of the wife became the property of the husband *jure mariti.*

The argument derives some support from the intimation of the learned Justice who delivered the opinion in Hackett's case (*supra*), but it will appear from an examination of the Maryland cases (alone cited by him) that the rights of *creditors* were involved, and that so far from any pecuniary consideration being necessary as between the parties, the contrary view was declared by the Supreme Court of that State. The case upon appeal does not very clearly show how the wife acquired or held the money in question, but granting that it was subject to the marital rights of the husband, we think that, as between him and his wife, his agreement to treat it as her separate property would be recognized in equity in cases like this, especially where there were no children to be provided for, and the claim of the wife was more meritorious than that of the collateral heirs whom the husband was under no moral obligation to maintain. *Garner* v. *Garner*, Busbee's Eq., 1.

BEAM *v.* BRIDGERS.

It is said by high authority that although the presumption is that the money of the wife during the marriage becomes the husband's, such presumption is not conclusive, and the husband "may so treat it as to charge himself and his heirs, as trustees of the wife, with the duty of applying it to her separate use." *Taggard* v. *Talcott*, 2 Ed. Ch., 628; *Resor* v. *Resor*, 9 Ind., 349; *Temple* v. *Williams*, 4 Ired. Eq., 39; *Woodruff* v. *Bowles*, 104 N. C., 197.

It is well settled that a husband may, after marriage, make gifts and presents to his wife which will be supported in equity against himself and his representatives (*Lucas* v. *Lucas*, 1 Atk. R., 270; Atherly on Mar. Set., 331; *Garner* v. *Garner, supra; Smith* v. *Smith*, Winston's Eq., 30), and it seems to be also well established that a trust may be raised in favor of the wife by proof that her husband paid the purchase-money for her benefit and with his own funds. *Raybold* v. *Raybold*, 8 Harris, 308; *Pinney* v. *Fellows*, 13 Vt., 325; *Farley* v. *Blood*, 10 Foster, 354; *Dyer* v. *Dyer*, White & Tudor L. C. Eq., 341.

In consideration of the foregoing authorities, we see no reason why the agreement of the husband in this case may not be sustained as against the parties to this action; and this being so, it must follow that there was a resulting trust.

Affirmed.